This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**VIVIAN I. WOODLEY,**
**n/k/a VIVIAN I. CULLEN**

　　　Petitioner-Appellee,

v.　　　　　　　　　　　　　　　　　　　　　　　　**NO. 31,917**

**SCOTT C. WOODLEY,**

　　　Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

Standridge & Navarro, P.C.
Amanda Navarro
Albuquerque, NM

for Appellee

Elizabeth Stacy Vencill
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1}　　Father appeals from the district court's adoption of the domestic relations

hearing officer's report and from the district court's judgment regarding child support and custody. The district court deviated from the child support guidelines. Father also challenges the sufficiency of the evidence to deny his motions to modify time-sharing with the younger daughter and the court's refusal to order counseling for the youngest daughter. We reverse in part and affirm in part.

**BACKGROUND**

{2}     Father and Mother divorced in 2006, and stipulated to a time-sharing agreement for their two daughters. Under the agreement, both children maintained a primary residence with Mother, and Father owed Mother $1070 per month in child support. The parties followed the time-sharing agreement until September 2010, when Father filed a motion to modify time-sharing alleging a significant and material change of circumstance.

{3}     In his motion to modify time-sharing, Father argued that it was in the elder daughter's best interests to reside primarily with him based on reports of physical abuse in Mother's house. He also argued that the younger daughter should have no less than fifty percent time-sharing with Father. Father subsequently filed motions to modify child support, and to order the parties' youngest daughter to attend counseling. A Domestic Relations Hearing Officer (the Hearing Officer) conducted four hearings to address Father's motions, and ultimately recommending granting Father's motion to modify time-sharing for the elder daughter and his motion to modify child support.

{4} The Hearing Officer recommended granting Father's motion to modify time-sharing with regard to the elder daughter because she was living primarily with Father by the time of the final hearing in October 2011, and because both parties agreed to maintain the status quo with regard to her physical custody. However, the Hearing Officer found that the change in the oldest daughter's primary residence did not automatically affect the youngest daughter's best interests and Father had failed to prove otherwise. The Hearing Officer further explained that Father had failed to meet his burden of proof with regard to counseling. As such, the Hearing Officer recommended that the district court deny both of Father's motions with regard to the youngest daughter. Because of the elder child's change in residence, the Hearing Officer recommended granting Father's motion to modify child support.

{5} The Hearing Officer used two separate worksheet (Table A) calculations as the basis to recommend a monthly modified child support obligation. The Hearing Officer determined that Mother owes Father $458 per month in child support for the oldest daughter, and that Father owes Mother $659 per month in child support for the youngest daughter. Neither party challenges the modification of child support or the Hearing Officer's Table A child support calculations on appeal. Thus, the Table A statutory child support guidelines, which were followed by the Hearing Officer in this case, are presumed to calculate the proper amount of child support. *See Leeder v. Leeder*, 1994-NMCA-105, ¶ 6, 118 N.M. 603, 884 P.2d 494. However, the Hearing

3

Officer recommended a deviation from the child support guidelines because each child also receives $459 per month from the Social Security Administration (SSA) as a derivative social security benefit arising from Father's disability.

{6}    When Mother was the primary custodian of both children, Father satisfied his child support obligation by having SSA pay both children's disability benefit to Mother, totaling $918 per month. Father was given credit for this benefit amount against child support payments. When the elder daughter moved in with Father, both parties agreed that her disability benefit amount then became payable to Father. Thus, the derivative effect of Father's disability entitled each party to receive $459 a month from SSA for each child. The Hearing Officer recommended that these disability payments were sufficient to fulfill both parties' child support obligations.

{7}    The district court adopted the Hearing Officer's report in full. The district court restated its intent to adopt the Hearing Officer's report after Father objected to the Hearing Officer's report. Father timely filed a motion to reconsider and for a new trial. The district court vacated the hearing on the motion to reconsider and for a new trial because Father had filed a notice of appeal with this Court. This Court sua sponte ordered a limited remand for the district court to address Father's motion to reconsider and for a new trial. Upon remand, the district court entered a final order adopting the recommendations of the Hearing Officer.

**DISCUSSION**

4

## A. Motion to Modify Child Support

{8} On appeal, Father contends that the district court erred in not awarding him child support. NMSA 1978, Section 40-4-11.1 (2008) requires the district court to use statutory guidelines to calculate a parent's support obligation and declares that there is a rebuttable presumption that the amount derived from this calculation is the appropriate amount of the support obligation. The district court, however, may deviate from the child support amount that would otherwise be payable under the guidelines due to equitable circumstances. NMSA 1978, § 40-4-11.2 (1989). Father's appeal challenges the district court's deviation from the child support guidelines based upon its allocation of the SSI disability benefits payable for each child. Father maintains the district court incorrectly attributed his disability benefits as a credit to Mother, thus reducing her child support obligations. We agree.

{9} "The setting of child support is left to the sound discretion of the [district] court as long as that discretion is exercised in accordance with the child support guidelines." *Quintana v. Eddins*, 2002-NMCA-008, ¶ 9, 131 N.M. 435, 38 P.3d 203. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision

5

that is premised on a misapprehension of the law." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (alteration, internal quotation marks, and citations omitted). We also review the court's findings of fact for substantial evidence. *Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16.

**{10}** New Mexico courts have long recognized that SSA benefits received by a child for a disability sustained by the non-custodial parent may be credited against the non-custodial parent's child support obligation during the period the benefits are received. *Mask v. Mask*, 1980-NMSC-134, ¶ 6, 95 N.M. 229, 620 P.2d 883; *Pedersen v. Pedersen*, 2000-NMCA-042, ¶ 1, 129 N.M. 56, 1 P.3d 974; *Romero v. Romero*, 1984-NMCA-049, ¶ 5, 101 N.M. 345, 682 P.2d 201. The reasons for credit are plain. SSA disability payments represent money which an employee has earned during his employment and also that his employer has paid for his benefit into a common trust fund under the Social Security Act. *Smith v. FDC Corp.*, 1990-NMSC-020, ¶ 23, 109 N.M. 514, 787 P.2d 433 ("Public assistance and social security constitute benefits from a collateral source[.]"); *see generally* 42 U.S.C. § 301 (2013). These payments are for the purpose of replacing income that is lost because of the employee's inability to work upon becoming disabled. *See Connick v. Cnty. of Bernalillo*, 1998-NMCA-060, ¶ 5, 125 N.M. 119, 957 P.2d 1153 ("In essence, the New Mexico [Workman's Compensation] scheme is an industry insurance plan to compensate injured workers

6

for loss of earning capacity as determined by statute."); *Mask*, 1980-NMSC-134, ¶ 6 ("Where a father who has been ordered to make child support payments becomes totally and permanently disabled, and unconditional [SSA] payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child support under the divorce decree." (alteration, internal quotation marks, and citation omitted)); *Codling v. Aztec Well Serv. Co.*, 1976-NMCA-044, ¶ 10, 89 N.M. 213, 549 P.2d 628 (explaining that lump sum disability payments are an exception to the legislative scheme of the Workers' Compensation Act because "[p]eriodic payments supply, in a measure, the loss of a regular pay check"). The key fact is that the benefits paid to the children are derived from the funds earned by the contributor and the person seeking the credit has contributed the funds through deductions of wages.

{11} Both parties cite *Mask* and *Pedersen* as supporting their respective positions, but neither case addresses the particular issue raised in this appeal. *See Mask*, 1980-NMSC-134, ¶¶ 6, 7 (addressing whether a disabled parent should receive credit against child support arrearages for SSA payments made on his behalf); *Pedersen*, 2000-NMCA-042, ¶¶ 1, 6 (holding that the district court must exercise its discretion on a case-by-case basis, with the child's standard of living a crucial factor, in allowing a disabled parent credit against basic child support for SSA benefits paid directly to the child as a result of the parent's disability). In this case, the Hearing Officer's

7

recommendation gave each party a $459 credit for the monthly disability benefit each parent received as payee for the child in his or her respective primary placement. Thus, in adopting the Hearing Officer's recommendation, the district court gave Mother credit toward her child support obligation even though she was the non-custodial parent and the SSA disability benefits were earned by Father, who was also the custodial parent for the child receiving those benefits.

{12}    It defies both common sense and the principles of equity to hold that the non-disabled parent is entitled to a credit for his or her child support obligation due to the SSA disability payments made on behalf of the disabled parent.  The SSA disability benefits received on behalf of the parties' minor children in this case are merely a substitute for the wages Father would have received, but for his disability, and from which his child support obligations would have been paid.  Although the benefits are payable directly to the children, the entitlement derives solely from Father. *See Mask*, 1980-NMSC-134, ¶ 8 ("[T]he benefit inures directly to the child, notwithstanding the prerequisite status of the parent." (internal quotation marks and citation omitted)).  We have found no authority, and Mother points to none, which allows a parent, who is not the disabled party through which the child is receiving SSA benefits, a credit against its child support obligations.

{13}    We conclude that Father's derivative disability payments to the children do not entitle Mother to any credit against her child support obligation.  Holding otherwise

would excuse Mother's entire child support obligation by using Father's disability funds from the SSA instead of her own funds. *See id.* (explaining that any windfall from government payments should go to the children for whom the payments are intended). Father, on the other hand, will be left with less money than the guidelines intend because Mother's child support obligation was calculated based upon both parents' gross income. *Pedersen*, 2000-NMCA-042, ¶ 2 ("[T]he child's income (whether from social security, his or her own earnings, from a trust established by grandparents or other sources) is relevant solely as a ground for deviating from the guidelines pursuant to Section 40-4-11.1."). Thus, Father will have to cover Mother's obligation to support the elder daughter with his own funds even though the guidelines contemplated that he receive $458 per month from Mother, irrespective of the SSA payment to his elder daughter. Such an outcome is inconsistent with the purpose stated by the Legislature for establishing child support guidelines: to provide for the best interests of the child by determining an adequate level of support for children commensurate with the parents' income and resources. Section 40-4-11.1(B).

{14} Our reasoning does not, as Mother argues, convert the youngest daughter's SSA benefit into cash income for Father, treat the benefit as a payment directly from Father, or credit Father for $918 of payments due to each daughter's benefit. Mother's argument is premised on the notion that reversing the district court would result in directly paying Father the derivative benefit as some form of income. This

9

framing does not match the reality. Absent the appropriate child support from Mother, Father will be left with less money to support the child in his household, while mother will be left with more. We do not purport to transfer the child's derivative benefit to Father; rather, we consider the implications of the derivative payment on the parties' respective obligations. There is no windfall or undue financial advantage to Father in this case.

{15} We have found no case that allows a parent, who is not the disabled or retired party through whom the child is receiving SSA benefits, a credit against their child support payments. As applied here, Mother may not directly benefit by receiving a credit for the fruits of Father's labor that has now been converted into an SSA disability payment. Accordingly, in the absence of a proper deviation from the calculation of child support established under the guidelines, Father is entitled to receive the child support amount properly established under the guidelines from Mother. We hold that the district court erred as a matter of law in adopting the Hearing Officer's modified computation of the child support due from Mother because it was an improper deviation and allowed Mother a direct credit against her child support obligation for a portion of Father's SSA benefits paid to the eldest daughter. After properly crediting Father for the SSA sums sent to Mother on behalf of the younger daughter, Father owes Mother $201 per month and Mother owes Father $458 per month. These are the correct child support amounts to be paid by the parties and

10

we reverse the district court's decision to affirm the Hearing Officer's recommendation. This matter is remanded to the district court to correctly modify the parties child support obligations in accordance with this determination. We remand this matter to the district court to correct the parties child support obligations in accordance with this decision.

**Motion to Modify Time-Sharing**

{16} In his second point on appeal, Father claims that the district court erred in denying his motion to modify the time-sharing arrangement for the younger daughter because the district court's finding that no substantial and continuing change in circumstances had occurred was not supported by the evidence and was against the weight of the evidence. In his motion to modify time-sharing, Father set out several occurrences which he alleged constituted a material change of circumstance. The Hearing Officer found that because the change of the elder daughter's primary residence was immaterial and Father had not personally witnessed the alleged occurrences, Father failed to meet his burden of proof to modify the time-sharing arrangement for the younger daughter.

{17} A court may modify a custody order only upon a showing that a substantial change in circumstances that affects the best interests of the children has occurred after the prior custody order was entered. *Thomas v. Thomas*, 1999-NMCA-135, ¶ 10, 128 N.M. 177, 991 P.2d 7. "We will overturn the [district] court's custody decision

11

only for abuse of discretion, and we will uphold the court's findings if supported by substantial evidence." *Id.* "To reverse the [district] court under an abuse-of-discretion standard, it must be shown that the court's ruling exceeds the bounds of all reason or that the judicial action taken is arbitrary, fanciful, or unreasonable." *Edens v. Edens*, 2005-NMCA-033, ¶ 13, 137 N.M. 207, 109 P.3d 295 (alteration, internal quotation marks, and citation omitted). "When there exist reasons both supporting and detracting from a [district] court decision, there is no abuse of discretion." *Talley v. Talley*, 1993-NMCA-003, ¶ 12, 115 N.M. 89, 847 P.2d 323.

**{18}** On appeal, Father argues that the Hearing Officer incorrectly refused to address the best interests of the child in finding that Father failed to meet his burden of proof. This argument is not supported by the record. The Hearing Officer expressly stated, "[w]hen a change in child custody or time[-]sharing is sought, the moving party must show a substantial change in circumstances and that the change affects the best interest of the child." *See Jeantete v. Jeantete*, 1990-NMCA-138, ¶ 6, 111 N.M. 417, 806 P.2d 66. Father also points this Court to a list of events which he alleges constitute a substantial change in circumstances. Father provides no record citations to support his allegations or authority for his argument that these events met the standard required to change the parties' time-sharing agreement. *See Murphy v. Strata Prod. Co.*, 2006-NMCA-008, ¶ 9, 138 N.M. 809, 126 P.3d 1173 ("Absent a record, we are left with the arguments in the briefs, and argument of counsel is not

12

evidence."); *Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 23, 140 N.M. 637, 145 P.3d 117 (refusing to address challenges to a district court's findings when the challenges are not supported by relevant and specific reasons and do not explain why the evidence relating to the finding is insufficient). Moreover, Father's assertion that some of the evidence supporting his allegations was excluded as hearsay evidence is not an assertion that the evidence supporting the district court's judgment is not sufficient. *See Fox v. Doak*, 1968-NMSC-031, ¶¶ 6-7, 78 N.M. 743, 438 P.2d 153.

{19} Father's brief has failed to address the substance of all the evidence bearing on the findings, or demonstrate how the evidence supporting the district court's findings fails to amount to substantial evidence. The Hearing Officer had Father's allegations before him and clearly laid out its reasoning for rejecting them. In adopting the Hearing Officer's recommendation, "[w]e must assume [that the district court] carefully weighed all considerations which could have had a bearing upon the question of what was for the best interest of the child." *Albright v. Albright*, 1941-NMSC-030, ¶ 9, 45 N.M. 302, 115 P.2d 59.

{20} "In cases such as this, we must rely strongly on the judgment and good sense of the [district] judge." *Stone v. Stone*, 1968-NMSC-116, ¶ 2, 79 N.M. 351, 443 P.2d 741. This Court will not re-weigh the evidence or substitute our judgment for the trier of fact on appeal. *Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 7, 111 N.M. 137, 802 P.2d 1283; *Dibble v. Garcia*, 1982-NMCA-040, ¶ 18, 98 N.M. 21, 644 P.2d 535. It

13

does not appear that the district court abused its discretion when it agreed with the Hearing Officer and rejected Father's assertion of a substantial change in circumstances. Based upon the record before us, we will not disturb the district court's findings and the ruling addressing the time-sharing arrangement for the younger daughter.

**B.      Motion to Order Younger Daughter to Attend Counseling**

{21}      We next address Father's argument that it was error for the district court to find that Father failed to meet his burden of proof necessary to support his motion to order counseling for the younger daughter. Father's argument again outlines the facts in favor of his motion and ignores the evidence favorable to the district court's finding of fact that was supported by the record. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Consistent with our rules of appellate procedure, we will not address the merits of Plaintiff's sufficiency of the evidence argument any further. *See* Rule 12-213 NMRA; *see also Aspen Landscaping, Inc., v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶¶ 28-29, 135 N.M. 607, 92 P.3d 53 (explaining that a party challenging a finding for lack of substantial evidence must refer to "all of the evidence, both favorable and unfavorable, followed by an explanation of why the unfavorable evidence does not amount to substantial evidence, such as is necessary to inform both the appellee and the Court of the true nature of the

14

appellant's arguments"). As a result, we conclude that the district court's findings and conclusions regarding the denial of Father's motion to order therapy for the younger daughter are supported by substantial evidence. *See* Rule 12-213(A)(4); *Nance v. Dabau*, 1967-NMSC-173, ¶ 8, 78 N.M. 250, 430 P.2d 747 ("Findings must be attacked on the basis that there is no substantial evidence to support them. If not so attacked, the findings must be accepted as the facts in the case." (citation omitted)). There is no need to address this matter any further.

**CONCLUSION**

{22} Accordingly, the order of the district court is affirmed in part and reversed in part. We remand this matter to the district court to adjust the parties child support obligations in accordance with the our holding in this Opinion.

{23} **IT IS SO ORDERED.**


_____
**TIMOTHY L. GARCIA, Judge**


**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**

_____

**MICHAEL E. VIGIL, Judge**